CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 17, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| **J. DOE,** | : |
| **Plaintiff,** | : |
| v. | : Civil Action No. 3:25-CV- 00094 |
| **ALBEMARLE COUNTY SCHOOL BOARD** | : |
| **Defendant.** | : |

# COMPLAINT

1. Defendant's decision to permit the Western Albemarle High School ("WAHS") Turning Point USA ("TPUSA") club (the "Club") to host an event titled "Two Genders: One Truth" (the "Event") violates Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a).

2. Defendant is aware that the Event is reasonably anticipated to result in discrimination against transgender and gender diverse[1] students. Defendant is aware that its decision to permit the Event will cause those students to undergo harassment or make them vulnerable to it. Defendant's decision to permit the Club to proceed with the Event is deliberately indifferent to the rights and harm that the Event will cause to transgender and gender diverse students.

---

[1] This term describes members of the many varied communities of individuals with gender identities or expressions that differ from the gender socially attributed to the sex assigned to them at birth. See World Professional Association for Transgender Health's (WPATH) Standards of Care—Eighth Edition (SOC-8), https://doi.org/10.1080/26895269.2022.2100644 (9/15/22).

**JURISDICTION AND VENUE**

3. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* This Court has jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. § 1331. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4. Venue lies with this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2), because the defendants reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

5. J. Doe is a nonbinary[2] student enrolled in and attending an Albemarle County Public Schools high school.

6. The Albemarle County School Board (the "School Board" or "Board") is an elected body responsible for the operation of the Albemarle County Public Schools ("ACPS"), including the promulgation of policies. At all times relevant, the School Board has acted and continues to act under color of state law.

**FACTUAL ALLEGATIONS**

<u>Transgender youth and gender dysphoria</u>

7. Everyone has a gender identity. It is an established medical concept, referring to a person's deeply felt, inherent sense of one's gender. Most people have a gender identity that matches the sex they are identified as at birth. But people who are transgender have a gender identity that differs from the sex they are assigned at birth.

---

[2] J. Doe uses "they/them" pronouns.

8. Just like being cisgender, being transgender or gender diverse is natural and is not a choice.

9. Studies suggest that the prevalence of gender diversity among adolescents is higher than earlier thought, suggesting that gender diversity in youth should no longer be viewed as rare.

10. For many gender diverse youth, adolescence is a critical period for the development of gender identity.

11. Being transgender or gender diverse is not a psychiatric condition, and implies no impairment in judgment, stability, reliability, or general social or vocational capabilities. However, transgender and gender diverse people face major mental health disparities: they are up to three times more likely to report or be diagnosed with a mental health disorder as the general population, and nearly nine times more likely to attempt suicide than the general population. These elevated rates of mental health disorders have been linked to complex trauma, societal stigma, violence, and discrimination.

12. Moreover, many transgender people are clinically diagnosed with gender dysphoria, a condition that is characterized by debilitating distress and anxiety resulting from the incongruence between an individual's gender identity and birth-assigned sex.

13. Transgender students face unique challenges in the school setting.

14. In the largest nationwide study of transgender discrimination available at the time, the 2015 U.S. Transgender Survey, 77% of respondents who were known or perceived as transgender in their K-12 schools reported harassment by students, teachers, or staff. For such students who were known or perceived to be transgender:

    o   54% reported verbal harassment;

- o 52% reported that they were not allowed to dress in a way expressing their gender;
- o 24% reported being physically attacked because people thought they were transgender;
- o 20% believed they were disciplined more harshly because teachers or staff thought they were transgender;
- o 13% reported being sexually assaulted because people thought they were transgender; and
- o 17% reported having left a school due to severe mistreatment.

15. Puberty is a particularly difficult time for transgender children, who often experience intensified gender dysphoria and worsening mental health as their bodies diverge further from their gender identity. Left untreated, gender dysphoria can cause, among other things, depression, substance use, self-mutilation, other self-harm, and suicide.

16. Being subjected to prejudice and discrimination exacerbates these negative health outcomes.

17. Multiple studies and expert consensus demonstrate that acceptance and affirmation of transgender and gender diverse youth are associated with fewer negative mental health and behavioral symptoms and more positive mental health and behavioral functioning. Psychiatric symptoms lessen with interventions that reduce discrimination.

18. Rejection by peers and school staff (e.g., intentionally using the name and pronoun the youth does not identify with, not acknowledging affirmed gender identity, bullying, harassment, verbal and physical abuse, poor relationships, rejection) is strongly linked to negative outcomes, such as anxiety, depression, suicidal ideation, suicide

attempts, and substance use. These negative outcomes continue into adulthood. Transgender and gender diverse youth often internalize rejection from peers as well as the transphobia that surrounds them, which can be impactful across their lifespan.

19. Even neutral or indifferent responses to a youth's gender diversity have been found to have negative consequences.

20. Harassment of transgender students is also inversely correlated with academic success: students who experienced greater harassment had significantly lower grade point averages.

21. Harassment at school is similarly correlated with negative mental health outcomes for transgender students. The opposite is also true, though: transgender students have better mental health outcomes when their gender identity is affirmed.

22. Some secular or religious organizations, such as the Family Foundation, undertake efforts to thwart an adolescent's expression of gender diversity or assertion of a gender identity other than the expression and behavior that confirms to the sex assigned at birth. These disaffirming behaviors are associated with increases in mental illness and poorer psychological functioning.

<u>School Division Policy</u>

23. The School Division's Policy on the Treatment of Transgender and Gender-Expansive Students (the "Policy") acknowledges the School Division's duty to maintain a safe and supportive school environment for all students free from harassment, intimidation, and/or bullying and free from discrimination because of actual or perceived biological sex, gender identity, and gender expression, among other protected characteristics.

24. The Policy expressly acknowledges the unique challenges that transgender and gender-expansive students face at school, which is what led the School Division to adopt the Policy.

25. The Policy concedes that the School Division has knowledge of the particular vulnerabilities that transgender and gender-expansive students face and the resulting potential for discrimination and harassment at school.

Plaintiff's Experience

26. Plaintiff is an active student, participating and holding leadership roles in various extracurricular activities.

27. Plaintiff aspires to go to college.

28. For as long as Plaintiff can remember, they have felt feelings of gender dysphoria and discomfort with their biological sex. That dysphoria and discomfort worsened as they became an adolescent.

29. During their ninth-grade year, Plaintiff came out as nonbinary and began using the pronouns "they/them," although they have been misgendered by other students, and at least one teacher, on many occasions. Other gender diverse students at Western Albemarle High School also have similar, if not worse, experiences.

30. Plaintiff's experience with gender dysphoria has led to significant symptoms of anxiety and depression. While they have developed strong coping skills, the symptoms of gender dysphoria, anxiety and depression are like background noise that make everything in their life more difficult. It is like an extra thing that they always worry about and try to push aside in order to get through the day. It is challenging to focus and devote their energy to academic and extracurricular demands with that constant noise. Knowing that there are

people around them who deny their existence is a weight that Plaintiff carries with them everywhere. Plaintiff feels demoralized to know that there are adults and peers going out of their way to make Plaintiff's life more difficult.

31. When Plaintiff learned about the Event, they were shocked and disappointed. Until that point, Plaintiff had generally felt that WAHS was a supportive environment. While Plaintiff knew there were a subset of students and teachers who denied their identity and existence, Plaintiff believed that Defendant would protect transgender and gender diverse students from hate and discrimination.

32. Plaintiff was disappointed that Defendant sanctioned this event rather than protecting Plaintiff and their peers from this discriminatory speech.

33. Plaintiff was disappointed that the Club was comfortable with this escalation in its rhetoric against individuals based on their identity. While the Club had invited speakers who espoused beliefs that Plaintiff disagreed with, this was the first event that targeted a specific group of individuals. As a result, the background noise that permeates every aspect of Plaintiff's life is now louder. With this escalation, it has become more difficult to manage the weight that Plaintiff carries.

34. While Plaintiff can choose not to attend the event, Plaintiff cannot avoid its promotion. The Club, and its sponsor teacher, have hung posters advertising the event throughout the school. It is impossible to avoid them. Each poster prominently displays the title "Two Genders, One Truth." This is a constant reminder of the ignorance and hate to be espoused, making it even more difficult for Plaintiff to go to school and focus on academic and extracurricular activities.

35. In addition to knowing that there are multiple members of the Club who have a discriminatory view of Plaintiff's existence, Plaintiff also knows that some students will be drawn to this event simply by the promise of free pizza and the potential for winning raffle prizes.

36. The Club routinely offers pizza and prizes as an enticement to encourage students to attend. As a result, many students attend even if they are not particularly interested in the topic at hand, particularly younger students. These students may be swayed by the inherently false information promoted by the event and will in turn adopt these discriminatory opinions. This can be reasonably anticipated to make the environment at Western Albemarle High School more hostile to transgender and gender diverse students.

The Event

37. On or about September 25, 2025, WAHS Principal Jennifer Sublette received a flyer for the Event, which the Club had planned for October 1, 2025. For the Event, the Club planned to host guest speaker Victoria Cobb, President of the Family Foundation, to give a presentation titled "Two Genders: One Truth."

38. Family Foundation of Virginia is a socially conservative and Christian fundamentalist lobbying organization headquartered in Richmond, Virginia.

39. Victoria Cobb and the Family Foundation deny that being homosexual or transgender is immutable. They are opposed to same-sex marriage and advocate for policies denying the identities and rights of transgender and gender-expansive individuals.

40. Victoria Cobb's public comments are dismissive and hostile towards transgender and gender-expansive individuals. She routinely attacks gender-affirming efforts as harmful to society.

41. The title of Victoria Cobb's presentation, in and of itself, made it clear that the Event would demean and call into question the identities of transgender and gender-expansive individuals, cutting to their core and belittling their place in society. This Event can reasonably be anticipated to serve to reinforce and emphasize a feeling of inferiority for transgender and gender-expansive students in a way that is unlikely to ever be undone.

42. Discriminatory language like Victoria Cobb's "Two Genders: One Truth" presentation has significant negative effects on transgender students. The inferiority reinforced by discriminatory language can severely hamper students' ability to learn effectively and even inhibit their willingness to attend school in the first place. Discriminatory language often leads to physical harm, as transgender and gender-expansive students are subject to violence at school at a far higher rate than other students. Transgender students also consider suicide, make suicide plans, and attempt suicide at far higher rates than other students.

43. The same day that she saw the Event flyer, Principal Sublette determined that it could not proceed as planned. As a result, she informed the Club that the event could not happen during the school day:

> Thank you for meeting with me today. During our meeting we discussed your club's plans to host Victoria Cobb from the Family Foundation on October 1 as a guest speaker on the topic "Two Genders One Truth" to quote from the flyer that was left in my mailbox before school this morning.
>
> During our time together, I pointed out that you and I had reviewed the club's plans for guest speakers at the start of the year and that this speaker had not been discussed at that time. I expressed my position that gender identity is a complex and controversial topic and that I wanted to support your club while also ensuring that hosting an open event focusing on this topic would not lead to a disruption to our instructional day. In addition to the mature content of this speaker, as you know our lunch period is 35 minutes long and we have previously had issues with special speaker events for TPUSA running over into the instructional block.

> My direction was that this club event would need to be offered after the school day. I offered open access to our building and supervision for students before and after the event given that our student activity bus runs at 6:45.
>
> Again, thank you for meeting with me. As I have shared with you before, I have appreciated that we have been able to work together to support your club activities and ensure students have access to the chapter you have created.

44. Principal Sublette was aware of and considered the potential for harm to transgender and gender-expansive students when she determined that the Event could not proceed as planned because it would result in disruption.

45. On September 26, 2025, the Founding Freedoms Law Center ("FFLC") sent a demand letter to School Division Counsel, Josiah Black. The demand letter, sent on behalf of the Club, its sponsoring teacher, Michelle Karpovich, and guest speaker Victoria Cobb, argued that the School Division was engaged in unlawful viewpoint discrimination.

46. On or about September 30, 2025, Defendant relented to legal pressure from FFLC and reversed its decision to prohibit the event from proceeding during the school day.

47. On or about October 3, 2025, after significant community backlash regarding the Event, the School Division issued a Community Message signed by Dr. Matthew Haas (Superintendent), Dr. Kate Acuff (School Board Chair), and Dr. Rebecca Berlin (School Board Vice-Chair). The Community Message affirmed the School Division's commitment to the safety, well-being, and success of every student and acknowledged its responsibility to maintain a safe and respectful school environment, free from discrimination, regardless of background and identity. The Community Message also expressly acknowledged that the School Division's decision to permit the Event has left many feeling invalidated.

48. The School Division's next regular board meeting was scheduled for October 9, 2025. Anticipating a larger than usual turnout and substantial disruption, the School Division arranged for a significant increase to security, including a weapons screening process not typically in place for regular board meetings. The School Division also issued another Community Message on October 8, 2025 acknowledging the potential for disruption and reminding the community of expectations on decorum.

49. The School Board convened on October 9, 2025. At the outset of the meeting, Superintendent Matt Haas delivered prepared remarks explaining Defendant's decision to permit the Event. He asserted that federal and constitutional law required Defendant to permit the Event.

50. Board Member, Allison Spillman, also delivered prepared remarks in response to backlash that she faced when she spoke out publicly against the Event. Ms. Spillman remarked that since speaking out against the Event on social media, she was subjected to a coordinated campaign of harassment and intimidation, which was terrifying. Ms. Spillman shared that she had received thousands of messages through various manners of communication full of assaults, harassment and statements containing threats against her family, her children, and other students at WAHS.

51. Numerous speakers gave public comment opposing the decision to permit the Event to proceed and informing Defendants of the harm that the Event will cause to transgender and gender diverse students.

52. On October 27, 2025, Plaintiff's counsel also sent a lengthy memo to Defendant outlining the factual and legal basis for Plaintiff's claims, putting Defendant on notice that they

would be in violation of the law if the Event was permitted to continue. That memo was summarily dismissed by Defendant's counsel.

## COUNT I

### Title IX of the Education Amendments of 1972
### 20 U.S.C. § 1681 et seq.

53. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

54. Albemarle County Public Schools and Western Albemarle High School are education programs receiving Federal financial assistance.

55. By giving permission for the Event to proceed at WAHS, Defendant violated – and continues to violate – the rights of Plaintiffs under Title IX.

56. Defendant knows that the Event will include discriminatory language targeting the identities of transgender and gender diverse individuals.

57. Defendant knows that the Event will create, and already has created, a hostile environment for transgender and gender diverse individuals. Defendant knows that the Event is intended to attack the place of transgender and gender diverse individuals in society.

58. Defendant has an affirmative duty under Title IX to prevent the Event because it is reasonably anticipated to result in discrimination against transgender and gender diverse students.

59. Defendant knows that by not preventing the Event, it is making transgender and gender diverse students more vulnerable to discrimination and harassment.

60. Defendant's decision to permit the Event is clearly unreasonable.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the following relief:

A. A declaration that Defendant's decision to permit Victoria Cobb's "Two Genders: One Truth" presentation at Western Albemarle High School violates Plaintiff's rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*;

B. Nominal damages in an amount determined by the Court;

C. A permanent injunction barring Victoria Cobb and the "Two Genders: One Truth" event at Western Albemarle High School and any other Albemarle County Public Schools campus;

D. Plaintiffs' reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

E. Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Alexis I. Tahinci*

Alexis I. Tahinci
VSB No. 85996
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
Tel: (423) 406-1151
Fax: (423) 815-1728
alexis@tahincilaw.com

Lauren E. Baum, Esq.
Law Office of Lauren E. Baum, PC
240 W Main St
Suite 100 - V32
Charlottesville, VA 22902
202-450-1396
l.baum@laurenebaumlaw.com
*Application for admission pro hac vice pending*