Case 3:25-cv-00094-JHY-JCH   Document 22   Filed 11/18/25   Page 1 of 6
Pageid#: 787

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
November 18, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| J. Doe, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:25-cv-00094 |
| | ) |
| Albemarle County School Board, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Plaintiff J. Doe's motion for a temporary restraining order, (Dkt. 3), and motion for a preliminary injunction, (Dkt. 7), both filed on November 17, 2025.  Doe requests that the court prohibit Defendant Albemarle County School Board ("the School Board") from allowing the Western Albemarle High School's Turning Point USA club ("TPUSA club") to host Victoria Cobb as a guest speaker for an event titled "Two Genders: One Truth."  (Dkt. 3 at 1.)  The event is scheduled for November 19, 2025, at 12:00 p.m.  (*Id.* at 1 n.1.)  The court held a hearing on the motion for a temporary restraining order on November 18, 2025. (Dkt. 21.)  The court finds that Doe has not made a clear showing that they are likely to succeed on the merits of the "deliberate indifference" element of the Title IX claim.  Accordingly, the court will deny Doe's motions for a temporary restraining order and preliminary injunction.

Under Federal Rule of Civil Procedure 65, federal courts are authorized to issue temporary restraining orders and preliminary injunctions.  The standard for granting a

temporary restraining order is the same as the standard for granting a preliminary injunction. *Young v. Draper*, No. 4:17-cv-00001, 2017 WL 598510, at *2 (W.D. Va. Feb. 14, 2017) (citation omitted). In this case, the court considers both the motions for the TRO and the preliminary injunction together. *See Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Rsrv. Sys.*, 773 F. Supp. 2d 151, 162–63 (D.D.C. 2011) (considering and deciding a TRO and preliminary injunction motion jointly).

To obtain a temporary restraining order or preliminary injunction, a plaintiff must show that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of an injunction, (3) the balance of hardships tips in their favor, and (4) the requested injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors "merge" when, as here, "the Government is the opposing party." *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022). The "extraordinary remedy" of a temporary restraining order or preliminary injunction requires a "clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The failure to meet any one of the relevant *Winter* factors mandates denial of the TRO. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part*, 607 F.3d 355, 346 (4th Cir. 2010).

While the court recognizes and sympathizes with Doe and their anxiety and distress surrounding the event, the court cannot find that Doe satisfies the first *Winter* factor. Doe is not able to make a "clear showing that [they are] likely to succeed at trial" on their Title IX claim. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). A Title IX claim premised on sexual harassment, as here, requires the plaintiff to prove that: "(1) the educational

institution receives federal funds; (2) the plaintiff was subjected to harassment based on her sex; (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity; and (4) there is a basis for imputing liability to the institution." *Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 491 (4th Cir. 2025) (cleaned up).

Under the fourth prong, liability may only be imputed to the institution in cases of deliberate indifference. *Id.* Specifically, the Supreme Court has held that an institution may be liable for third-party harassment "only where [its] response to the harassment or lack thereof is *clearly unreasonable* in light of the known circumstances." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (emphasis added). The *Davis* standard "sets the bar high for deliberate indifference." *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 76 (4th Cir. 2016).

Specifically, the *Davis* Court held that "it would be entirely reasonable for a school to refrain from a form of disciplinary action that would expose it to constitutional or statutory claims." *Davis*, 526 U.S. at 649; *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) ("Nor is an institution subject to Title IX liability when it refrains from a form of disciplinary action that would expose it to constitutional or statutory claims." (cleaned up)). Here, the School Board was exposed to both statutory and constitutional claims after Principal Jennifer Sublette announced her decision to move the original event from lunch to evening. (Compl. ¶¶ 43–45.) The demand letter—sent from Michael B. Sylvester on behalf of the TPUSA club, sponsoring teacher, and Cobb—delineated these potential claims, which included First Amendment viewpoint discrimination and federal Equal Access Act

violations. (Dkt. 3-1 at 1.) The letter asked the Board to correct the "unlawful act" "immediately." (*Id.*)

While a demand letter with frivolous or empty claims would not suffice to show the School Board's exposure to liability, the First Amendment and Equal Access Act claims raised in this demand letter involve nuanced and sometimes unsettled questions of law. First Amendment protections for school settings established in cases like *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), and *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. 180 (2021), as well as the prohibition on viewpoint discrimination expounded in cases like *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98 (2001), cast doubt on Doe's assertion that permitting the event to proceed was clearly unreasonable. "[A]s [the Fourth Circuit] and other courts have recognized, First Amendment parameters may be especially difficult to discern in the school context." *Abbott v. Pastides*, 900 F.3d 160, 174 (4th Cir 2018). Although the court does not rule on the merits of any First Amendment or Equal Access Act issues, it recognizes that the School Board weighed the issues arising from this complex area of law while facing potential legal claims from a range of entities. The continued debate among School Board leadership, advocacy groups, and members of the public in the weeks before and after the October 9 board meeting further underscores the thorniness and obscurity of applying federal law to this dispute. (Compl. ¶¶ 43–52.) Accordingly, the court finds the Board's response based on their understanding of the law was not "clearly unreasonable."

The School Board also promptly responded to the complaints and community backlash it received. Within about a week of its decision to reinstate the lunchtime event,

the Board issued a Community Message recognizing "that these discussions have left many feeling angry, frustrated, or invalidated," and affirming that "[the Board's] policies require us to ensure students' constitutional rights to assemble and hear diverse perspectives, just as we expect respectful conduct and nondiscrimination in all schools." *Albemarle Cnty. Pub. Schs.*, A Message to Our ACPS Community (Oct. 3, 2025)[1]; (Dkt. 3 at 6.)  As discussed during the TRO hearing, the School Board also consulted its legal counsel and laid out parameters for the event to ensure that it could proceed behind closed doors without disrupting the school or violating any laws.  Courts have held that "[f]ollowing advice of counsel that at least arguably comports with school policy cannot be deemed deliberate indifference" in Title IX cases.  *Ross v. Univ. of Tulsa*, 180 F. Supp. 3d 951, 968 (N.D. Okla. 2016), *aff'd*, 859 F.3d 1280 (10th Cir. 2017).  The evidence in the complaint of the Board's continued deliberation, debate, consultation with counsel, and communication with the public undermines Doe's claims that the Board was deliberately indifferent.

Because Doe does not establish a clear showing of a likelihood of success on the merits, the court does not reach their arguments on the remaining *Winter* factors.

For the foregoing reasons, Plaintiff J. Doe's motion for a temporary restraining order (Dkt. 3) and motion for a preliminary injunction (Dkt. 7) are **DENIED**.

---

[1] The Community Message is posted on the School Board's public website at: https://www.k12albemarle.org/our-departments/communications/message-board/~board/community-messages/post/a-message-to-our-acps-community-100325.

**ENTERED** this <u>18th</u> day of November, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE