IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

J. DOE,

  Plaintiff,

v.                                                Case No. 3:25-cv-00094-JHY-JCH

ALBEMARLE COUNTY SCHOOL
BOARD,

  Defendant.

## THE SCHOOL BOARD'S REPLY IN SUPPORT OF THE MOTION TO DISMISS THE AMENDED COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)

### INTRODUCTION

Doe's Title IX claim arises from a speaker event titled "Two Genders One Truth" that was held during the lunch period at WAHS on November 19, 2025.[1] Ms. Cobb's position is one held by "[m]any Americans": "that biological sex reflects divine creation, that sex and gender are inseparable, and that children should be encouraged to accept their sex and to live accordingly." *See Mahmoud v. Taylor*, 606 U.S. 522, 553 (2025). The School Board and its employees wrestled with the legal implications of either permitting or preventing the speaker event. The School Board, while not endorsing Ms. Cobb's message, determined that the First Amendment and other federal law required that the event be permitted to occur during WAHS's lunch period.

Attendance at the speaker event was voluntary, meaning that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Posters for the event were displayed in WAHS for roughly five school days before the event, and the event was

---

[1] For readability, the School Board adopts all abbreviations in its brief in support. (ECF No. 41.)

1

mentioned in the morning announcement and daily bulletin for three days before the event.

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

To state a Title IX claim, Doe must plausibly allege the above events were sex-based *harassment*, the sex-based harassment was *severe or pervasive*, and the School Board *acted with deliberate indifference* in addressing the severe or pervasive sex-based harassment. Because Doe has not done so and their opposition does not show otherwise, their Title IX claim must be dismissed with prejudice. Moreover, Doe does not have standing to request injunctive relief because they do not sufficiently allege that the complained-of conduct is imminently likely to injure Doe in the future.

## ARGUMENT

Two matters are worth addressing at the outset. **First**, Doe contends that the School Board "made material misrepresentations" during the hearing on Doe's motions for preliminary-injunctive relief. (*E.g.*, ECF No. 47 at 4.) The representations made during the hearing were based on the information gathered during the short period of time between Doe initiating this action and the hearing and were not intended to mislead this Court.[2] Regardless, the purported "misrepresentations" are not material to Doe's claim. Doe argues the "steps" referenced during the hearing—a sign-up sheet and a limit of 100 students— were intended to "mitigate the harm that the [e]vent would cause to transgender and gender diverse students." (ECF No. 47 at 4.) The "steps" mentioned during the hearing responded

---

[2] Doe's allegation that more than 200 students attended the speaker event is based on representations that the TPUSA club and Ms. Cobb, not the School Board, made after the fact. (ECF No. 34 ¶ 68 n.3.)

2

to Doe's assertion that the event would disrupt the instructional day.³ (*See* ECF No. 3 at 19, 21; ECF No. 7 at 17, 19.) Doe's argument that the event and its promotion are sex-based harassment sufficient to violate Title IX remains the same whether 1 student or 500 students attended the event and whether there was sign-up list for the event.

**Second**, Doe asserts that the School Board went "out of its way" to note the comments of their counsel during the October 9, 2025 meeting and that "[t]his information serves no legitimate purpose other than to case [Doe]'s counsel in an unfavorable light." (ECF No. 47 at 3 n.2.) To the contrary, identifying the statements of Doe's counsel during the meeting serves a two-fold purpose. *First*, the statement was made to the School Board and addressed the purported deficiencies in the "legal analysis" in the Superintendent's statement; addressed counsel's position on the School Board's legal obligations, including her position on the First Amendment and Equal Access Act; and threatened potential litigation. School Board Meeting at 1:25:00–1:26:51. Counsel's statement, therefore, undercuts Doe's argument that the memorandum of their counsel—which contained arguments like those raised during the meeting—was not considered by the School Board. (*See* ECF No. 34 ¶ 64.) *Second*, the statement reflects the reality in which the School Board was asked to make a decision. Counsel for Ms. Cobb threatened to sue the School Board if

---

³ Doe's allegations reflect that there were "steps" taken to mitigate disruption to the instructional day. Students were prohibited from protesting in the hallway outside the classroom where the event was held and additional "police/security" were secured. (ECF No. 34 ¶¶ 74–75.) Also, students who entered the event were not allowed to leave until it concluded. (*Id.* ¶ 77.) Doe argues these "steps" weigh against the School Board because the "steps" did not prevent "harassment." (*E.g.*, ECF No. 47 at 23.) This is confusing because WAHS did not force students ▓▓▓▓▓▓▓▓▓ to attend the event. This is also confusing because the "steps" were taken to mitigate disruption to the instructional day. Doe cannot seriously contend that the "steps" failed to do that.

3

the speaker event did not proceed as planned.[4] (ECF No. 41-1.) Then, during a lengthy public comment, Doe's counsel promised to help "trans and nonbinary kids lawyer up and sue" the School Board—e.g., this lawsuit—if the event occurred.

A.   **Doe does not have standing to request injunctive relief.**

Doe's opposition conflates the ongoing effects of a past injury—a damages question—with unconstitutional conduct that is sufficiently imminent or ongoing—a question of standing for injunctive relief. (ECF No. 47 at 6–7.) If Doe's theory of standing were correct, then the plaintiff in *City of Los Angeles v. Lyons* could have obtained an injunction preventing the police from using "control holds" in the future because the plaintiff experienced ongoing injuries from a "control hold" used on him in the past. 461 U.S. 95, 98 (1983). But the Supreme Court rejected this theory of standing in *Lyons*:

> That [the plaintiff] may have been illegally choked by the police on October 6, 1976, while presumably affording [the plaintiff] standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part.

*Id.* at 105. And in *O'Shea v. Littleton*, a case on which Doe relies, the "continuing, present adverse effects" were the effects of individuals who were "serving an allegedly illegal sentence or were on trial or awaiting trial before" a magistrate and associate judge accused of engaging in unconstitutional conduct. 414 U.S. 488, 496 (1974) (concluding the plaintiffs did not have standing to seek injunctive relief). In rejecting the plaintiffs' standing argument, the Supreme Court noted:

---

[4] Counsel also represents the TPUSA club's teacher-sponsor. (ECF no. 41-1 at 1.) For readability, the School Board refers to counsel as Ms. Cobb's counsel.

> [T]he question becomes whether any perceived threat to [the plaintiffs] is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they may appear before [the magistrate and judge] and, if they do, will be affected by the allegedly illegal conduct charged. . . . [I]t seems to us that attempting to anticipate whether and when these [plaintiffs] will be charged with crime and will be made to appear before [the magistrate or judge] takes us into the area of speculation and conjecture.

*Id.* at 496–97.

Doe requests an injunction here because, according to Doe, at some point in the future *another* high school's TPUSA club *might* host Ms. Cobb "or a similar speaker." (ECF No. 34 ¶ 84.) That is not sufficient to establish standing for injunctive relief. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) (rejecting standing for injunctive relief because it rested on the plaintiff being involved in a future car accident, a crash report being generated, and the defendants obtaining the crash report). Because Doe lacks standing to request injunctive relief, their request for injunctive relief must be dismissed.

**B.**     **Doe does not state a claim under Title IX.**

As discussed in the School Board's brief in support, Doe does not plausibly allege three of the four elements of their Title IX claim. (ECF No. 41 at 12–22.)

    **1.**     **Doe does not plausibly allege that the speaker event and its promotion amounted to sex-based harassment.**

Sex-based harassment can occur when a student "is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). In its brief in support, the School Board noted the Fourth Circuit's decision in *Feminist Majority Foundation v. Hurley*, in which an all-male rugby team at a university identified specific members of feminist groups on campus and

5

threatened them with physical and sexual violence and referred to group members "by such terms as 'femic**ts, feminazis, c**ts, bitches, hoes, and dikes.'" 911 F.3d 674, 682 (4th Cir. 2018). This conduct was sufficient to constitute harassment under Title IX.

Doe does not address *Hurley* on the harassment element. Doe instead relies on out-of-circuit caselaw to argue that hostility to "a person's gender" equates to "sex-based harassment." (ECF No. 47 at 8.) There are instances in which hostile gender-based conduct can amount to harassment, but the caselaw on which Doe relies shows why that is not the case here. In *Wolfe v. Fayetteville, Arkansas School District*, for example, a student alleged that *over a five-year span* he was "harassed several times per week including pushing, shoving, name-calling, and being falsely labeled as homosexual. The name-calling included gender-based epithets such as 'faggot,' 'queer bait,' and 'homo,' among others." 648 F.3d 860, 862 (8th Cir. 2011). The student was punched and had his head slammed into a window, and during his ninth-grade year, classmates created a social-media group titled "Every One [sic] That Hates [the Student]" and used a picture of the student's face "photo-shopped onto a figure in a green fairy costume with the word 'HOMOSEXUAL' written across it." *Id.* Moreover, the student's classmates "graffitied highly offensive, homosexual accusations about [the student] on bathroom walls and in classroom textbooks."[5] *Id.*

In *Whitley v. Independent School District No. 10*, another case on which Doe relies, a student alleged that two other students repeatedly called her "slut," "whore," and "bitch," among other misconduct. No. CIV-18-331-SLP, 2019 WL 7667329, at *9 (W.D. Okla. Apr. 22, 2019). The district court held that there was "no indication that the other students'

---

[5] In *Wolfe*, the Eighth Circuit rejected the student's contention that "mere name-calling and rumors with sexual connotations [we]re sufficient to meet Title IX." 648 F.3d at 868.

actions were more than 'insults, banter, teasing, shoving, pushing, and gender-specific conduct . . . even [though] these comments target[ed] differences in gender.'" *Id.* (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651–52 (1999)). The district court granted summary judgment to the defendant on the student's Title IX claim.

*Hurley*, *Wolfe*, and *Whitley* all support the School Board's position that Doe does not plausibly allege they experienced sex-based harassment. The event was promoted during the morning announcements and daily bulletin for only three days, and Doe does not allege any facts specifying what the promotion entailed. (ECF No. 34 ¶ 71.) The posters were displayed in WAHS's hallways for only five school days, and the posters contained only the event's title.[6] (*Id.* ¶ 70.) Doe's conclusory assertion that the promotion "reinforc[ed] a feeling of inferiority that is unlikely to ever be undone," (ECF No. 47 at 9), is undercut by the fact that, after hearing the announcements and seeing the posters, ▮

▮ (ECF No. 34 ¶ 78.)

Although Doe disagrees with Ms. Cobb's message, Doe does not plausibly allege that Ms. Cobb's statements during the event about the use of single-gender restrooms and locker rooms and her position on gender identity are sex-based *harassment*. (*See id.* ¶ 76.) For example, Doe argues Ms. Cobb's statement that there are only two genders amounts to ridicule. (ECF No. 47 at 9.) This is not ridicule under any definition of the word as demonstrated by the harassment at issue in *Hurley*, *Wolfe*, and *Whitley*. *See Defending*

---

[6] The School Board does not assert that the colors used in the poster are "just a coincidence," as Doe contends in opposition. (ECF No. 47 at 9.) Ms. Cobb's message is that there are only two genders. Thus, it is understandable that she would use blue (a color typically associated with the male gender), pink (a color typically associated with the female gender), and white (a filler color) when creating the event poster. Regardless, Doe does not plausibly allege that the color scheme of the event poster is sex-based *harassment*.

7

*Educ. v. Olentangy Loc. Sch. Distr. Bd. of Educ.*, 158 F.4th 732, 757 (6th Cir. 2025) (en banc) (noting that the use of biological pronouns in school was not abusive); *see also Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 535 (3d Cir. 2018) (finding "patently frivolous" a comparison between cases of "egregious harassment" and the mere presence of transgender individuals in a locker room or restroom). And the fact that the TPUSA club previously distributed buttons with "My Pronouns are Patriot" at some unspecified point and initiated a petition to exclude transgender girls from the girls' restroom does not transform the event and its promotion into harassment, and Doe does not provide authority stating otherwise.

For these reasons and those stated in the brief in support, Doe does not plausibly allege that the speaker event and its promotion amounted to sex-based harassment.

### 2. Doe does not plausibly allege that the speaker event and its promotion amounted to severe or pervasive harassment.

Sex-based harassment violates Title IX only if the harassment has a "systemic effect" or "is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victim['s] educational experience, that the victim-student[] is effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651–52. Said differently, "[h]arassment reaches the sufficiently severe or pervasive level when it creates an environment that a reasonable person would find hostile or abusive and that the victim . . . subjectively perceives . . . to be abusive." *Jennings*, 482 F.3d at 696 (cleaned up).

It is worthing noting again Doe does not allege that, in the days leading up to the event, students made comments to Doe about the speaker event, its promotion, or its message, or relied on the speaker event, its promotion, or its message to harass Doe or

8

exclude Doe from educational opportunities. Nor does Doe allege that——in the more than two months that have passed since the speaker event—such statements or conduct were directed at Doe.

Doe's claim instead rests on the event's promotion during the five school days before the event, the event itself, and a comment made during the event. In making this argument, Doe asserts that the event and its promotion are severe sex-based harassment because they attack "immutable, core characteristics of transgender and gender diverse individuals." (ECF No. 47 at 10.) Doe's argument overlooks that courts, including the Supreme Court, have noted without disdain the belief held by "[m]any Americans" that there are only two genders. *E.g.*, *Mahmoud*, 606 U.S. at 551 ("Many Americans . . . believe that biological sex reflects divine creation, that sex and gender are inseparable, and that children should be encouraged to accept their sex and to live accordingly."); *Defending Educ.*, 158 F.4th at 753 (noting that "many believe that only two sexes (male and female) exists"). Doe does not provide authority showing how a discussion with high-school students ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ on this topic, accepted by "[m]any Americans," equates to severe or pervasive sex-based harassment sufficient to violate Title IX.

Doe instead relies on selected quotes from caselaw to argue that comments about an individual's sexual orientation "can strike a person at the core of his being." (ECF No. 47 at 10 (quoting *Nuxoll v. Indian Prairie Sch. Dist. #204*, 523 F.3d 668, 671 (7th Cir. 2008).) But even in *Nuxoll*, the Seventh Circuit recognized that "people do not have a legal right to prevent criticism of their beliefs or for that matter their way of life." 523 F.3d at 672 (noting that the "negative comments" sought to be made by the plaintiff did not "name[] or otherwise target[] an individual" or amount to defamation). The Seventh Circuit went on to

9

note that a school policy prohibiting derogatory comments would not pass constitutional muster if the school "understood 'derogatory comments' to embrace any statement that could be construed by the very sensitive as critical of one of the protected group identities." *Id.* at 674. This position, which the Seventh Circuit rejected, is almost identical to Doe's position, e.g., the title "Two Genders One Truth" is critical of transgender and gender-diverse students and, therefore, violates Title IX.

As noted above, Doe's position cannot be squared with cases like *Mahmoud*. *See also Nuxoll*, 523 F.3d at 671–72 ("[O]n the other hand the suppression of adolescents' freedom to debate sexuality is not one of the nation's pressing problems, or a problem that can be solved by aggressive federal judicial intervention."). Indeed, the Supreme Court has previously noted the importance of the First Amendment's protection of viewpoints. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 660 (2000) ("And the fact that [homosexuality] may be embraced and advocated by increasing numbers of people is all the more reason to protect the First Amendment rights of those who wish to voice a different view.")

Doe also highlights the student's comment at the event and out-of-school statements made by Ms. Cobb and TPUSA club members in the two days after the event. (ECF No. 47 at 12.) Doe does not plausibly allege the isolated comment is sufficiently severe or pervasive. "[O]ffhand comments[] and isolated incidents (unless extremely serious) will not amount to discrimination." *Jennings*, 482 F.3d at 696 (quotation omitted) (cleaned up). Doe does not allege that the student who made the statement or other students at WAHS made similar statements before or after the event. And Doe does not plausibly allege that the isolated comment was "extremely serious" as required to implicate Title IX. *See Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 266 n.15 (4th Cir. 2021) (noting that a jury could

10

conclude that a sexual assault that involved digital penetration of the plaintiff and lasting trauma "were serious enough to trigger Title IX liability"). Moreover, Doe does not explain how the out-of-school statements in the two days following the event exceeded the alleged severity of the discussion during the event or why Ms. Cobb's out-of-school statements—over which the School Board has no control—are relevant at all.

Further, even looking at all the complained-of conduct together, Doe does not plausibly allege that they were "effectively denied equal access to [WAHS]'s resources and opportunities." *Davis*, 526 U.S. at 651–52. Doe did not allege in the amended complaint, for example, that their grades suffered or that they missed class or days of school because of the incident. Doe instead relied on vague allegations of feeling "drained," of having to "work even harder," and being less engaged in class discussion. (ECF Doc. 34, at ¶¶ 93-94, 97); *see Nungesser v. Columbia Univ.* 244 F. Supp. 3d 345, 369 (S.D.N.Y. 2017) (holding that allegations the plaintiff was "fearful to participate in class discussion" did not plausibly allege a Title IX claim). In their opposition, Doe relies on equally vague assertions of a "disadvantaged learning environment." (ECF No. 47 at 14.)

The three cases cited by Doe again undermine their position that the speaker event and its promotion "so undermine[d] and detract[ed] from" Doe's educational experience," that Doe was "effectively denied equal access to [WAHS]'s resources and opportunities." *See Davis*, 526 U.S. at 651–52. In *Doe*, for example, evidence suggested that the plaintiff was sexually assaulted on a school bus. 1 F.4th at 275. In *Jennings*, a male soccer coach frequently singled out female players and asked them about their sexual life such as, "How many guys in the [lacrosse] team did [you] f\*\*k?" and "[Who is your] f\*\*k of the week[?]" 482 F.3d at 695. The coach also discussed his "sexual fantasies about several players,"

11

commented on players' bodies (e.g., "nice legs" and "nice rack[s]"), and questioned the plaintiff one-on-one in a hotel room about her sexual life, among other things. *Id.* at 693. And as a result of being sexually molested and chocked by an older student and then taunted by classmates, the plaintiff in *Doe v. Qually* allegedly experienced a decline in her mental health, "was unable to focus on school work, hid in the bathroom for up to three class periods a day to avoid harassment, sat with her head down on her desk in class, went to a teacher's classroom for lunch and did not go to the gym due to fear, attempted suicide, and missed a total of 38 days of school during a single academic year." 2021 WL 2546456, at *2, *6 (E.D.N.C. June 21, 2021) (cleaned up). The speaker event and its promotion—again, about a topic which is "hotly contested" and accepted by "[m]any Americans" and a ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—pale in comparison to the conduct at issue in these cases.

For all these reasons and those stated in the brief in support, Doe does not plausibly allege that the speaker event and its promotion amounted to severe or pervasive sex-based harassment.

### 3. **Doe does not plausibly allege that the School Board acted with deliberate indifference.**

A school board is liable under Title IX only when it acts with deliberate indifference to sex-based harassment that is severe or pervasive. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Deliberate indifference is a high bar. *S.B. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016).

A school board does not act with deliberate indifference when it refrains from a course of action "that would expose it to constitutional or statutory claims." *Davis*, 526 U.S. at 649; *Hurley*, 911 F.3d at 686; *Doe v. Albemarle Cnty. Sch. Bd.*, No. 3:25-cv-94,

2025 WL 3225052, at *2 (W.D. Va. Nov. 18, 2025). Doe argues that this principle is dicta and is not relevant to this case because claims identified by Ms. Cobb's counsel are "weak" and because a disciplinary action was not at issue. (ECF No. 47 at 17–18.)

The principle announced in *Davis* is not dicta, and courts in the Fourth Circuit have not treated as such. *See Hurley*, 911 F.3d at 686 ("Nor is an institution subject to Title IX liability when it 'refrain[s] from a form of disciplinary action that would expose it to constitutional or statutory claims.'") (quoting *Davis*, 526 U.S. at 649). But assuming for the sake of argument that Doe is correct on the dicta point, lower courts are "obliged to afford great weight to Supreme Court dicta." *Hengle v. Treppa*, 19 F.4th 324, 347 (4th Cir. 2021) (quotation marks omitted). The Fourth Circuit has characterized the deference to Supreme Court dicta as "substantial, if not controlling." *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 281 (4th Cir. 2019) (en banc). Doe does not cite any authority that rejects the principle announced in *Davis*.

As to the strength of Ms. Cobb's potential claims, this Court noted that the claims were "nuanced" and presented "unsettled questions of law." *Doe*, 2025 WL 3225052, at *2. Doe disagrees, arguing that First Amendment jurisprudence is clear.[7] (ECF No. 47 at 18.) Doe's disagreement proves the point: the fact that the School Board and its counsel, as well as this Court, found Ms. Cobb's potential claims to at least have colorable heft shows why a school board would not act with deliberate indifference when determining how to respond to the potential claims.

Additionally, *Fellers v. Kelley*, No. 24-cv-311-SM-AJ, 2025 WL 1098271 (D.N.H. Apr. 14, 2025), which Doe cites extensively, also undercuts their argument. There, at least

---

[7] Doe does not address the purported clarity of the jurisprudence of the claim under the Equal Access Act that Ms. Cobb's counsel identified in the demand letter.

13

three parents wore pink wristbands displaying "XX" to a high-school girls' soccer game in which one team had an allegedly biological male on its roster. *Id.* at *3, *7. The parents were asked to remove the wristbands or leave the game because the "XX" on the wristbands was perceived as an anti-trans symbol. *Id.* at *3, *8. The district court denied the parents' motion for a preliminary injunction against certain school policies that might be used to prevent the parents from again wearing the wristbands at an extracurricular event. *Id.* at *1. In doing so, the district court found that the school employees acted because they "reasonably concluded that [the parents] communicated a symbolic message (however quietly and passively) that was demeaning, harassing, and harmful to, and targeted at, a specific transgender player as well as other transgender students. *That does not constitute unlawful viewpoint discrimination*." *Id.* at *15 (emphasis added).

In May 2025, the parents appealed the district court's decision (something Doe fails to note), and the First Circuit heard oral argument on November 5, 2025. *Fellers v. Kelley*, No. 25-1442 (1st Cir. Nov. 5, 2025).[8] A few points made during the argument are worth noting here:

> **Court:** And wouldn't it be viewpoint discriminatory to permit a message saying you should be there but not a message that you can't be there?

Oral Argument at 42:33–42:40.

> **Court:** So then you're back to Judge Rickleman's question about exclusionary and inclusionary, and isn't that inherently viewpoint discrimination?

---

[8] A recording of the oral argument can be found in two places. **First**, on the First Circuit's website. U.S. Court of Appeals for the First Circuit, *Opinions & Oral Arguments*, https://www.ca1.uscourts.gov/opinions-oral-arguments (select "Audio Recordings of Recent Oral Arguments"; in the "Search by Docket Number or Title" query at the top search "25-1442"; then select "Fellers v Kelley"). **Second**, on Court Listener. Court Listener, https://www.courtlistener.com/audio/101207/fellers-v-kelley/ (last visited Feb. 14, 2026). Court Listener also provides a real-time transcript.

Oral Argument at 45:02–45:14.

> **Court:** That is harassment to say we don't agree you should be here?
>
> **Counsel:** I think it is.
>
> **Court:** All right. Assume one rejects your argument that that is harassment.

Oral Argument at 46:41–46:53.

The School Board highlights these points not to make a predictive judgment on what the First Circuit will do, but rather to note the balance between Title IX and the First Amendment (and the Equal Access Act) is not clear as Doe contends. Even the denial of the petition for a writ of certiorari in *L.M. v. Middleborough* had two dissents, one of which noted the case "present[ed] an issue of great importance for our Nation's youth":

> [W]hether public schools may suppress student speech either because it expresses a viewpoint that the school disfavors or because of vague concerns about the likely effect of the speech on the school atmosphere or on students who find the speech offensive.

145 S. Ct. 1489, 1489–90 (2025) (Alito, J., dissenting); *see Griffin v. United States*, 336 U.S. 704, 716 (1949) (noting the Supreme Court's "admonition that denial of a petition for certiorari imports nothing as to the merits of a lower court decision"). Thus, the School Board's assessment of the demand letter from Ms. Cobb's counsel was not clearly unreasonable.

Doe's argument that *Davis* does not apply here because a disciplinary action is not at issue rests on a distinction without a difference: a school board's decision (whether it be a disciplinary decision or a decision related to an on-campus event) is not clearly unreasonable if the alternative would expose the school board to legal liability. Doe's related argument that the School Board and its employees "did nothing" because the

15

Case 3:25-cv-00094-JHY-JCH   Document 51   Filed 02/17/26   Page 16 of 19
Pageid#: 1031

speaker event was permitted to occur and be promoted cannot be squared with *Davis*. By definition, weighing the legal implications of permitting or preventing an on-campus speaker event is doing something. Moreover, WAHS's Principal addressing the speaker event with the TPUSA club[9]; the Superintendent and ACPS's counsel assessing the demand letter from Ms. Cobb's counsel; ACPS addressing the speaker event through a community message signed by the Superintendent and the School Board's Chair and Vice-Chair; the Superintendent and three members of the School Board making statements about the event and the School Board's legal obligations during the October 9, 2025 meeting; the School Board hearing public comment during the October 9 meeting, including comment from Doe's counsel about her legal position; WAHS not permitting protests outside the voluntary speaker event; and WAHS retaining additional "police/security" are not "doing nothing."

Doe also emphasizes the School Board's policy related to transgender and gender-expansive students. (ECF No. 47 at 15–16.) But the School Board's policies cannot override the requirements of the First Amendment or federal law. *See, e.g.*, *Mahmoud*, 606 U.S. at 530 (holding that school parents were likely to succeed on their First Amendment challenge to a school board's policies); *Child Evangelism Fellowship of Md., Inc. v.*

---

[9] Doe argues that the School Board "enabled the harassment" by permitting the speaker event to occur during WAHS's lunch period "over the principal's better judgment." (ECF No. 47 at 15.) Doe's argument first ignores that the Principal did not direct that the event and its promotion be canceled; she instead directed that the event occur at WAHS after the instructional day. (ECF No. 34 ¶ 51.) Doe's position is that the speaker event and its promotion is harassment, meaning it is irrelevant to Doe's position *when* the event occurred. Doe's argument also ignores the Principal's stated reasons for directing that the event occur after the instructional day. The Principal expressed a desire to avoid a disruption to the instructional day based on the event's mature content and the potential that the event would exceed WAHS's 35-minute lunch period. (ECF No. 34 ¶ 51.) The Principal did not direct a change in the event's timing based on a belief that the event was harassment.

*Montgomery Cnty. Pub. Schs.*, 457 F.3d 376, 385–89 (4th Cir. 2006) (holding that a school division's take-home flyer policy violated the First Amendment in part because it lacked safeguards against viewpoint discrimination). And it is well-established that once a school creates a limited public forum, the school cannot engage in viewpoint discrimination. "When the State establishes a limited public forum . . . [a]ny restriction must not discriminate against speech on the basis of viewpoint." *Good News Club v. Milford Central Sch.*, 533 U.S. 98, 106 (2001); *accord Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021) ("Government entities may create a limited public forum in a specified location for a limited use, so long as they do not impose those limits in a manner that discriminates based on the speaker's viewpoint.").

Here, concerns around viewpoint neutrality drove the decision to permit the speaker event to occur during WAHS's lunch period. School Board Meeting at 7:40–13:38, 16:09–20:37, 20:40–24:33. Indeed, viewpoint discrimination was the thrust of the demand letter from Ms. Cobb's counsel. (ECF No. 41-1 ("[WAHS] actively permits a separate club to host lunch-period meetings that directly focus on issues regarding sexuality from a perspective contrary to the views held by the TPUSA Club.")); *see Boy Scouts of Am.*, 530 U.S. at 660 ("And the fact that [homosexuality] may be embraced and advocated by increasing numbers of people is all the more reason to protect the First Amendment rights of those who wish to voice a different view.").

Doe also attempts to attribute another student's statement during the event to the event itself and, by extension, the School Board. (ECF No. 47 at 12 (asserting that the School Board "enabled" the statement).) The amended complaint does not plausibly attribute the use of a slur or threat of violence to the event or its promotion, and there is no

17

allegation that anyone ████████ overheard the statement. Moreover, ████████

████████████████████████████████████████████████

████████████████. Thus, Doe does not plausibly allege that the School Board acted with deliberate indifference as to the comment. *See Davis*, 526 U.S. at 649 (noting that schools "must merely respond to *known* peer harassment in a manner that is not clearly unreasonable") (emphasis added); *S.B.*, 819 F.3d at 75 (noting that Title IX liability hinges on deliberate indifference to "*known* acts of . . . harassment") (emphasis added).

For all these reasons and those stated in the brief in support, Doe does not plausibly allege that the School Board acted with deliberate indifference to known sex-based harassment that was severe or pervasive.

## CONCLUSION

For all the above reasons and those stated in the brief in support, the School Board respectfully requests that this Court grant the motion to dismiss and dismiss with prejudice Doe's amended complaint.

**ALBEMARLE COUNTY SCHOOL BOARD**

By Counsel

/s/ Brian P. Ettari
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Brian P. Ettari (VSB No. 98800)
Counsel for Albemarle County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com
bettari@hccw.com

## **C E R T I F I C A T E**

I hereby certify that on the 17th day of February 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered users.

/s/ Brian P. Ettari
Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Brian P. Ettari (VSB No. 98800)
Counsel for Albemarle County School Board
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia  23255
804-747-5200 - Phone
804-747-6085 - Fax
jcapps@hccw.com
myork@hccw.com
bettari@hccw.com